UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**     IN CHAMBERS ORDER re: MOTION for Judgment on the Pleadings and to Strike Class Allegations [65]

## I.     INTRODUCTION

On December 29, 2011, Plaintiff Leonidas Jovel ("Plaintiff") filed this class action complaint against Defendants Boiron, Inc., Boiron USA, Inc., and Laboratories Boiron (collectively, "Defendants"), alleging that Defendants made false and misleading statements in the course of advertising two dietary supplements, Oscillococcinum and Children's Oscillococcinum (collectively, "Oscillo"). (Dkt. 1.  On March 28, 2013, the Court granted Plaintiff leave to file an amended complaint. (Dkt. 59).[1]  Now before the Court is Defendants' motion for judgment on the pleadings and to strike class allegations.  (Dkt. 65).  For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

Oscillo is an over-the-counter homeopathic drug manufactured and distributed by Boiron.  (FAC ¶ 1).  This lawsuit concerns the Oscillo product label, which represents that the drug "temporarily relieves flu-like symptoms," and that its active ingredient "reduce[s] the duration and severity of flu-like symptoms."  (Id. ¶¶ 1, 22).  Before delving further into the allegations in the FAC, however, it is worth noting that the instant action was preceded by another class action brought in the Southern District of California.  The Court describes those proceedings before turning to the instant case.

---

[1]  The Court deems the First Amended Complaint filed on February 27, 2013.  (See Dkt. 52, Ex. A ("FAC")).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

### A.    *Gallucci* **Proceeding**

On September 2, 2011, California consumers filed a putative class action lawsuit against Boiron, alleging that Oscillo does not work as advertised. Gallucci v. Boiron, Inc., No. 3:11-cv-2039 (S.D. Cal. filed Sept. 2, 2011). They argued that although Boiron claims that the Oscillo products reduce flu symptoms, the active ingredient in the products is "not active in combating the flu," and in any event, the products are so heavily diluted that the active ingredient "is not actually present in the Oscillo" products. (Dkt. 54-1, Ex. A ("Galluci FAC") ¶ 23).[2] Accordingly, the plaintiffs raised claims for California consumer fraud violations and breach of express warranty, seeking monetary and injunctive relief. (Id. ¶¶ 12-30, 64(a)).

On March 6, 2012, the parties in Gallucci moved for preliminary approval of a class action settlement. (FAC, Ex. A ("Galluci Settlement"). The settlement offers a $5 million class fund for purchasers of Oscillo between January 1, 2000 and July 27, 2012. (Id. ¶¶ 4, 6(B)). Further, the settlement provides injunctive relief in two respects. First, Boiron agreed to place two disclaimers on its product labels and packaging and website stating that Oscillo's uses have not been evaluated by the FDA ("FDA Disclaimer"), and explaining homeopathic dilutions ("Dilution Disclaimer"). (Gallucci Judgment ¶¶ 4, 6(B)). Last, the settlement provides 24 months from its effective date to implement the disclaimers. (Galluci Settlement ¶ 4.1.5). For any consumers who purchase Oscillo before the disclaimers are implemented, Boiron agreed to provide the "Boiron Promise," a money-back guarantee by which purchasers can obtain product refunds. (Id. ¶¶ 1.34, 4.1.6).

On October 31, 2012, the Gallucci court issued a final judgment and order approving the settlement. (Dkt. 65, Ex. F ("Gallucci Judgment"). Although three objectors filed notices of appeal, it appears that only one has filed an appellate brief to challenge the settlement. (Def. Mot. at 5).

### B.    **Instant Proceeding**

Plaintiff filed this action on December 29, 2011, two months after Gallucci commenced. Plaintiff similarly asserts that although Oscillo purports to "temporarily relieve[] flu-like symptoms," clinical studies have shown that the active ingredient in the products achieves no such results, and even if it did, the active ingredient is virtually undetectable. (Compl. ¶¶ 20, 21). Accordingly, Plaintiff sought monetary and injunctive relief on behalf of a California class of purchasers of the Oscillo

---

[2] A court may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." Trigueros v. Adams, 658 F.3d 983, 987 (9th Cir. 2011) (internal quotation marks omitted).

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

products. (Id. at 15-16). The case was temporarily stayed, however, pending the approval of the class settlement in Galluci. (Dkt. 29, 31). Plaintiff was among two individuals who opted out of that settlement. (FAC ¶ 36). After the Gallucci settlement was finalized, this Court reinstated this case to its active docket. (Dkt. 45).

The Court granted Plaintiff leave to file the FAC on March 28, 2013. The FAC asserts the same claims as the original complaint, but this time on behalf of two classes. If Gallucci is reversed on appeal, Plaintiff desires to represent the original class proposed in his preceding complaint. (FAC ¶ 51). If the Gallucci settlement stands,[3] however, Plaintiff intends to represent a class of persons comprising: (1) persons, such as Plaintiff, who opted out of the Gallucci settlement ("opt-outs"); and (2) persons who purchased Oscillo after July 27, 2012, the class cut-off date in Gallucci ( "post-Galluci purchasers"). (Id. ¶ 52). Plaintiff envisions that this class "will and should include:" (a) persons who purchased Oscillo after July 27, 2012, but before the Gallucci settlement's disclaimers are implemented; (b) persons who purchased Oscillo after July 27, 2012, but after the disclaimers are added. (Id.). Plaintiff seeks to represent the two classes on a "multi-state" basis under the several states' consumer fraud laws, or alternatively on a California statewide level. (Id. ¶¶ 56-59).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990). A Rule 12(c) motion is "functionally identical" to a Rule 12(b) motion to dismiss. Thus, "the same standard of review applicable to a Rule 12(b) motion applies to its 12(c) analog[.]" Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 192 (9th Cir. 1989).

To survive a Rule 12(b)(6) motion, the complaint must contain 'enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light

---

[3] Plaintiff does not credibly dispute that unless and until it is reversed, the Galluci settlement carries res judicata effect. See Eichman v. Fotomat Corp., 759 F.2d 1434, 1439 (9th Cir. 1985) ("The federal rule on the preclusive effect of a judgment from which an appeal has been taken is that the pendency of an appeal does not suspend the operation of an otherwise final judgment for purposes of res judicata.")

|  |  | : |  |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

most favorable to the non-moving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031–32 (9th Cir. 2008). A court may consider exhibits attached the complaint, matters properly subject to judicial notice, and documents upon which the complaint relies and whose authenticity is not disputed. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). The Court is not, however, "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Id.

Rule 12(b)(1) also authorizes the Court to dismiss any claim for which the Court lacks subject jurisdiction. "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be "ripe" for adjudication." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121-22 (9th Cir. 2010). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." Id. "On a motion to dismiss for lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor." Id.

Finally, pursuant to Rule 12(f), the Court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." Kaz v. Mercedes-Benz USA, LLC, 2011 WL 5248299, at *3 (C.D. Cal. Oct. 31, 2011) (internal citiation and quotation marks omitted). "Before the motion is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Id. (internal quotation marks omitted). "While class allegations can be stricken at the pleadings stage, it is rare to do so before a motion for class certification has been filed. Id. (internal quotation marks omitted).

## IV.   SUBJECT MATTER JURISDICTION

### A.   Purchasers Prior to July 27, 2012

Plaintiff states that if Gallucci is reversed on appeal, Plaintiff desires to represent the original class proposed in his preceding complaint, which includes the Galluci class (i.e., individuals who purchased Oscillo between January 1, 2000 and July 27, 2012). (FAC ¶ 51). Defendants argue that to the extent Plaintiff continues to seek damages on behalf of this class, such claims are barred by the Gallucci settlement and the doctrine of res judicata. In addition, Defendants argue that Plaintiffs' claims in this regard are unripe because they are only viable in the event the Galluci settlement is reversed.

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

Plaintiff agrees that, at this time, these class allegations are not yet ripe and are potentially subject to res judicata.  (Pl. Opp. at 4).

"If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed."  S. Pac Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks omitted); Chandler, 598 F.3d at 1122-23 ("The central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks omitted)).  Because Plaintiff's claims on behalf of the Galluci class are contingent on the outcome of an undecided appeal, they are not ripe for review.  See In re Lowenschuss, 170 F.3d 923, 932 (9th Cir. 1999) (dismissing appeal as unripe because claim was contingent on the outcome of an undecided appeal); United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal., 727 F. Supp. 2d 876, 883 (C.D. Cal. 2010) (dispute over whether attorney was entitled to recover portion of seized properties as payment for his services to forfeiture claimants was unripe because underlying award of seized properties was pending review in the Ninth Circuit).  Because the Court lacks subject matter jurisdiction over the Galluci claims, they are DISMISSED WITHOUT PREJUDICE.

### B.       Non-Gallucci Purchasers

Next, Defendants urge the Court to dismiss Plaintiff's class allegations on behalf of the opt-outs and post-Galluci purchasers, for three reasons.  The Court finds none of them availing.

First, Defendants argue that there is no "class" of opt-outs for Plaintiff to represent.  Defendants note that only two persons opted out of the Galluci settlement, and the other opt-out is pursuing a separate action.  Further, Defendants contend that Plaintiff cannot represent post-Galluci purchasers because he is not one himself.  However, Defendants define the class too narrowly.  The Court has already explained that "Plaintiff brings his claims on behalf of a class of non-Galluci purchasers – i.e., persons who opted out of the settlement or who purchased the Oscillo products after July 27, 2012.  These consumers share the common trait of not being party to the Galluci settlement."  (Dkt. 59 at 7).  Defendants fail to explain why Plaintiff cannot belong to such a class in theory.  To the extent Defendants take issue with Plaintiff's adequacy as a representative, that argument is more appropriately

|  | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

addressed on a motion for class certification. The Court's ruling in this Order expresses no view on whether Plaintiff can satisfy the adequacy requirements on a motion for class certification.[4]

Second, Defendants argue that Plaintiff cannot represent post-Galluci purchasers who bought the products before the disclaimers are implemented. Defendants contend that the Galluci court already provided a remedy for such consumers, namely a refund under the "Boiron Promise." Thus, Defendants argue that permitting Plaintiff to proceed would amount to "relitigation" of the Galluci remedy that would "seriously undermine the possibility for settling any large, multi district class action," see In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 367 (3d Cir. 2001), and would run counter to notions of comity, see Exxon Corp. v. U.S. Dep't of Energy, 594 F. Supp. 84, 89-91 (D. Del. 1984). Neither argument succeeds. First, the remedy issued in Galluci is only binding upon the purchasers prior to July 27, 2012. Since Plaintiff only seeks to represent opt-outs and purchasers after July 27, 2012, his putative class does not seek to "relitigate" any released claims. This case is nothing like Prudential, where plaintiffs who were members of a class settlement subsequently brought related claims in state court. 261 F.3d at 357. Second, Plaintiff's action does not offend comity. In Exxon, the energy company asked a federal district court in Delaware to review a decision of the Department of Energy granting Exxon entitlement exception relief, despite the fact that another court in Wyoming had already deferred ruling on the same DOE decision, pending resolution before the Federal Energy Regulatory Commission, and also issued an ongoing injunction forbidding the DOE to require Exxon to purchase any more entitlements. 594 F. Supp. at 87-88. The Delaware court declined to exercise jurisdiction on the ground that doing so would constitute a "serious interference with the jurisdiction and outstanding injunction of the Wyoming District Court." Id. at 89. Here, by contrast, exercising jurisdiction over the post-Galluci purchasers does not stop them from seeking a refund instead under the Boiron Promise. They are free to choose a refund or a lawsuit. Accordingly, these concerns do not strip the Court of jurisdiction.

---

[4] Defendants further argue that Plaintiff's claims on behalf of those who buy the products after the disclaimers are implemented, are unripe because the disclaimers are contingent on the Ninth Circuit affirming the Galluci settlement. Be that as it may, the thrust of Plaintiff's claim does not depend on whether or not the disclaimers are implemented. Plaintiff alleges that the product labels are misleading regardless of the disclaimers. Therefore, the contingency of the disclaimers does not render Plaintiff's claims unripe. At the same time, Plaintiff can only represent putative class members who have actually purchased Oscillo within the class period. Accordingly, to the extent Plaintiff seeks to represent hypothetical purchasers of the products with disclaimers, such claims are DISMISSED without prejudice. Plaintiff is not precluded from amending his class consistent with the applicable rules.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

Third, Defendants argue that Plaintiff's claims are moot because the Boiron Promise already offers the very relief sought by any post-Galluci purchasers. At this early stage, there is not enough information in the record for the Court to discern whether the Galluci refund scheme necessarily moots Plaintiffs' claims on behalf of the post-Galluci purchasers. Defendants' citation to Tosh-Surryhene v. Abbott Labs. Inc., No. CIV S-10-2603, 2011 WL 4500880, at *5 (E.D. Cal. Sept. 27, 2011), is not controlling. There, the court relied on a developed factual record concerning the actual operation of the refund scheme. Id. at *4-5. Here, by contrast, no party has presented evidence about how the Boiron Promise has functioned in practice. See, e.g., Colwell v. Department of Health and Human Services, 558 F.3d 1112, 1121 (9th Cir. 2009) ("In support of a motion to dismiss under Rule 12(b)(1), the *moving party* may submit affidavits or any other evidence properly before the court. . . . It *then* becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." (internal quotation marks omitted) (emphasis added)). In addition, the Court notes that the Boiron Promise does not offer *all* the relief Plaintiff seeks, such as injunctive relief. At any rate, this argument is better resolved under a superiority analysis on a motion for class certification. See Webb v. Carter's Inc., 272 F.R.D. 489, 504 (C.D. Cal. 2011).

### C.      Standing To Seek Injunctive Relief

Defendants argue once again that Plaintiff lacks standing to seek injunctive relief because he thinks the products are ineffective and therefore will not buy them again. "[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 978 (9th Cir. 2011) (internal quotation marks omitted). "Plaintiffs must show standing with respect to each form of relief sought." Id.

To allege redressability, Plaintiff must demonstrate that he is "realistically threatened by a *repetition* of the violation." Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006) (internal citation and quotation marks omitted). "Allegations that a defendant's continuing conduct subjects unnamed class members to the alleged harm is insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury." Wang v. OCZ Technology Group, Inc., 276 F.R.D. 618, 626 (N.D. Cal. 2011) (citing Hodgers–Durgin v. De La Vina, 199 F.3d 1037, 1044-45 (9th Cir. 1999)).[5]

---

[5] Contrary to Plaintiff's view, although his California consumer claims are governed by state law, the question of standing in federal court is governed by Article III. Lee v. Am. Nat'l Ins. Co., 260 F.3d 997, 1001-02 (9th Cir. 2001) ("[A] plaintiff whose cause of action is perfectly viable in state court

|  |  | : |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

        In determining whether Plaintiff's claims are redressable, the Court finds instructive the analysis in <u>Delarosa</u> v. <u>Boiron, Inc.</u>, No. SACV 10-1569-JST (CWx) (C.D. Cal. Dec. 28, 2012).  There, the plaintiff, who had also purchased a homeopathic drug, sought monetary and injunctive relief under various Califiornia consumer statutes.  The court granted summary judgment in favor of the defendants on plaintiff's claim for injunctive relief, reasoning that "[b]ecause Plaintiff does not believe the product works and does not intend to purchase it again, there is not a sufficient likelihood that [she] will again be wronged in a similar way."  (Ward Decl., Ex. H at 8).

        Other district courts similarly have dismissed claims for injunctive relief where it was clear that the plaintiff would not face repetition of the violation.  <u>See</u> <u>Freeman</u> v. <u>ABC</u> <u>Legal</u> <u>Servs.</u>, No. 3:11-cv-3007-EMC, 2012 U.S. Dist. LEXIS 92404, at *12-27 (N.D. Cal. July 3, 2012) (dismissing claim for injunctive relief where the likelihood that plaintiffs would again suffer defendant's alleged misconduct "depends largely on undefined contingencies"); <u>Wang</u>, 276 F.R.D. at 626-27 (granting motion to dismiss claim of injunctive relief where plaintiff failed to allege a likelihood that he would once again purchase the allegedly mislabeled product); <u>Cattie</u> v. <u>Wal-Mart</u> <u>Stores, Inc.</u>, 504 F. Supp. 2d 939, 951-52 (S.D. Cal. 2007) (granting motion to dismiss claim for injunctive relief where plaintiff was "now fully aware" of alleged falsity and the complaint "contains no allegations suggesting she intends to buy linens from Wal-Mart.com in the future").

        To be sure, some courts have decided the issue differently for policy reasons.  For example, in <u>Henderson</u> v. <u>Gruma</u> <u>Corp.</u>, No. CV 10–04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011), the court denied a motion to dismiss a claim for injunctive relief for lack of standing even though the consumer was aware of alleged falsehood and thus would not purchase products again.  The court reasoned that "[i]f the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ("once bitten, twice shy") and would never have Article III standing."  <u>Id.</u> at *7.  In the <u>Henderson</u> court's view, preventing the plaintiffs from being these claims "would surely thwart the objective of California's consumer protection laws," which is "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  <u>Id.</u> at *8.[6]

---

under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.").

        [6] <u>See also</u> <u>Koehler v. Litehouse, Inc.</u>, CV 12-04055, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2013) (relying on <u>Henderson</u> and holding that plaintiff had standing even though he did not intend to

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

However, the policy-oriented reasoning in <u>Henderson</u> is irreconcilable with the Ninth Circuit's decision in <u>Hangarter v. Provident Life and Acc. Ins. Co.</u>, 373 F.3d 998, 1021-22 (9th Cir. 2004). There, the plaintiff was denied disability coverage and sued her insurance carrier under California's Unfair Competition Act, Cal. Bus. & Prof. Code § 17204, seeking injunctive relief against future violations. <u>Id.</u> at 1021.  The Ninth Circuit held that because the plaintiff "currently has no contractual relationship with Defendants and therefore is not personally threatened by their conduct," she lacked Article III standing to pursue injunctive relief. <u>Id.</u> at 1022.  Significantly, the Ninth Circuit expressly recognized that California state law would have permitted the same plaintiff to seek injunctive relief as a "private attorney general" even though she faced no future injury. <u>Id.</u>  Nonetheless, the Ninth Circuit concluded that "'a plaintiff whose cause of action [under § 17204] is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury' to establish Article III standing." <u>Id.</u> (quoting <u>Lee v. Am. Nat'l Ins. Co.</u>, 260 F.3d 997, 1001-02 (9th Cir. 2001)).  <u>Hangarter</u> makes clear that a federal court may not relax the standards for Article III standing to accommodate the policies of state laws.  Accordingly, the Court rejects the reasoning in <u>Henderson</u> and its progeny.

Here, as in <u>Delarosa</u>, Plaintiff lacks Article III standing to seek injunctive relief because there is no alleged threat of a repetition of the same injury.  To the contrary, Plaintiff admits in the FAC that "[h]ad Plaintiff known the truth about Defendants' misrepresentation and omissions . . . Plaintiff would not have purchased Defendants' Product." (FAC ¶ 10).  Further, Plaintiff concedes that he is now aware that Oscillo does not provide the advertised benefits.  (FAC ¶ 4).  Thus, Plaintiff's own allegations show that because he is aware that Oscillo does not deliver the promised benefits, Plaintiff will not purchase Oscillo again in the future.  Absent a likelihood of future harm, Plaintiff lacks standing to seek injunctive relief and the Court lacks subject matter jurisdiction over this claim.  Further, "if none of the *named* plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  <u>Lierboe v.</u>

---

make another purchase of the product because to hold otherwise "would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief"); <u>Cabral v. Supple, LLC</u>, EDCV 12-00085-MWF (OPx), 2012 WL 4343867 (C.D. Cal. Sept. 12, 2012) (same) (citing <u>Henderson</u>); <u>Bohn v. Pharmavite, LLC</u>, CV11-10430-GHK (CWx) (C.D. Cal. May 16, 2012) (declining to consider motion to dismiss claim for injunctive relief on the ground that granting motion "will only result in striking specific forms of relief on a piece-meal basis"); <u>Barrera v. Pharmavite</u>, CV 11-04153 (C.D. Cal. Sept. 19, 2011) (finding "without merit" defendant's contention that plaintiff's knowledge of alleged misconduct would bar plaintiff from seeking injunctive relief in the context of class action, but providing no reasoning).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

State Farm Mut. Auto Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) (internal quotation marks omitted) (emphasis added).  Accordingly, the Court DISMISSES the non-Galluci class's claims for injunctive relief.

## V.    PLAINTIFF'S UCL, CLRA, AND EXPRESS WARRANTY CLAIMS ARE PROPERLY PLED

### A.    Plaintiff's Claims Are Pled With Sufficient Particularity

Defendants argue that Plaintiff does not satisfy the heightened pleading standards that Federal Rule of Civil Procedure 9(b) demands of claims grounded in fraud.  Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  When pleading fraud, a complaint must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).  The complaint must include an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted).  In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false."  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superceded by statute on other grounds.

The Court concludes that Plaintiff has pled his fraud claims with sufficient particularity. Plaintiff alleges that Defendant's packaging for Oscillo, which is photocopied in the complaint, states that the drug "temporarily relieves flu-like symptoms such as run-down feeling, headache, body aches, chills and fever," and that its active ingredient "reduce[s] the duration and severity of flu-like symptoms."  (FAC ¶¶ 1, 17, 23).  Plaintiff states that around November 2011, he saw the Oscillo packaging and purchased the product for approximately $20 for one box of Oscillo.  (Id. ¶ 10).  He alleges that the packaging was misleading because the Oscillo product he purchased "did not reduce or relieve his flu-symptoms as represented."  (Id.).  Plaintiff further alleges that the representations on the packaging are false or misleading because (1) "[c]linical cause and effect studies have shown that the sole 'active' ingredient in Oscillo . . . ("Anas Barbariae") . . . does not temporarily relieve flu-symptoms;" and (2) at any rate, the ingredient is "diluted to such a degree that even if it were effective in relieving flu symptoms . . . the odds of even a molecule of Anas Barbariae extract being in a dose of Oscillo is mathematically impossible."  (Id. ¶¶ 2, 18, 22).  As a result, Plaintiff claims that he has "suffered injury in fact and lost money or property as a result of Defendants' conduct because he purchased Oscillo in reliance on Defendants' flu-like representations."  (Id. ¶ 69).  Plaintiff also claims

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

that he and similarly situated consumers "would not have purchased Oscillo had they known Defendants' representations were false and misleading," and that therefore they "have been damaged in their purchases of Oscillo in that they were deceived in some manner into purchasing Defendants' Products." (Id. ¶ 29). These allegations are sufficiently particularized to enable Defendants to defend themselves. See, e.g., Rosales v. FitFlop, 882 F. Supp. 2d 1168, 1176 (S.D. Cal. 2012) (finding UCL claims complied with Rule 9(b) by (1) providing reproductions of defendant's protect advertisements and identifying the allegedly misleading language; (2) identifying the time period of the advertising campaign; and (3) providing facts showing defendants misrepresented the product's benefits). Accordingly, Defendants' motion is DENIED to the extent it is based on Rule 9(b).

**B.      Plaintiff's Breach of Warranty Claim Is Properly Pled**

Defendant argues that the express warranty claim fails because the FAC does not allege the exact warranties at issue. Under California law, to state a claim for breach of express warranty, Plaintiff must allege that the seller: "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." Keegan v. Am. Honda Motor Co., Inc., 838 F. Supp. 2d 929, 949 (C.D. Cal.2012) (internal citation and quotation marks omitted). "Statements made by a manufacturer through its advertising efforts can be construed as warranty statements." Aaronson v. Vital Pharm., Inc., No. 9-CV-1333, 2010 WL 625337, at *6 (S.D. Cal. Feb. 17, 2010) (citing Keith v. Buchanan, 220 Cal. Rptr. 392, 396 (Ct. App. 1985)). "A buyer does not need to show that he relied on such statements to the extent that he would not have made the purchase without them, but only that they played a role in his purchasing decision." Id. at 397 (citing Keith, 220 Cal. Rptr. at 397).

Here, the FAC alleges that Defendants' packaging for Oscillo states that the drug "temporarily relieves flu-like symptoms such as run-down feeling, headache, body aches, chills and fever," and that its active ingredient "reduce[s] the duration and severity of flu-like symptoms." (FAC ¶¶ 1, 17, 23). Further, Plaintiff alleges that he viewed these representations before deciding to purchase Oscillo, and that he would not have bought the drug if he had known the label was misleading. (Id. ¶ 10). Additionally, Plaintiff asserts that the warranties were breached because the product did not, and could not, deliver the promised benefits. (Id. ¶¶ 10, 18, 22). As a result, Plaintiff claims that he has "suffered injury in fact and lost money or property as a result of Defendants' conduct because he purchased Oscillo in reliance on Defendants' flu-like representations." (Id. ¶ 69). These facts are sufficient to state a plausible claim of breach of express warranty. See, e.g., Forcellati v. Hyland's, Inc., 876 F. Supp. 2d 1155, 1162-63 (C.D. Cal. 2012) (denying motion to dismiss claim for breach of express warranty where plaintiff identified defendant's affirmation regarding effectivness of cold and flu medicine, located on the product packaging, and further alleged that the products failed to deliver the

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|

| Title | Leonidas Jovel v. Boiron Inc et al |
|---|---|

promised benefits).  Accordingly, Defendant's motion is DENIED as to the breach of express warranty claim.

### C.      Studies Do Not Foreclose Plaintiff's Claims

Defendants contend that all of Plaintiff's claims must fail because the FAC fails to plausibly allege that Oscillo does not in fact relieve flu symptoms.  In particular, Defendants point to two clinical studies cited by Plaintiff in his prior motion for class certification, which purportedly demonstrate that Oscillo does in fact relieve flu symptoms.  (Dkt. 21).[7]  Defendants argue that these studies are "central – indeed essential" to the FAC, and therefore must be incorporated by reference.  Thus, Defendants invite the Court to interpret these studies to foreclose any claim that Defendants' representations are false or misleading.

A document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); see also Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002) (holding "that a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned").  Further, the Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) (ruling that a separate billing agreement was "integral" to the complaint because its terms dictated whether the statute of limitations had been triggered).  But the mere mention of the existence of a document is insufficient to incorporate the contents of a document.  See Ritchie, 342 F.3d at 908 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (2d ed.1990)).

The Court concludes that it would be premature to incorporate these two studies into the pleadings.  The FAC only alleges generally that "[c]linical cause and effect studies have shown that the sole 'active' ingredient in Oscillo . . . does not work as represented by Defendants and, in particular, it does not temporarily relieve flusymptoms."  (FAC ¶¶ 2, 22, 25, 27).  Consequently, the Court cannot determine, without speculating, that the FAC in fact relies on the findings of the two specific studies referenced by Defendants.  Unlike Coto, where there was only one billing agreement at issue, here

---

[7]  The two studies are (1) Evidence Review, Homeopathic Osciloococcinum For The Prevention And Treatment of Influenza (July 2004); and (2) Guo, R., *Complementary Medicine for Treating or Preventing Influenza or Influenza-like Illness*, 120 Am. J. Med. 923 (2007).  (Dkt. 23, Exs. 2-3).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|

| Title | Leonidas Jovel v. Boiron Inc et al |
|---|---|

Plaintiff could be referencing any number of clinical studies.  Moreover, Defendants have cited no authority for the proposition that Plaintiffs' citation to these studies in a previously filed motion for class certification automatically incorporates them into a subseqeuently filed complaint.  For these reasons, the Court refrains from probing these two studies to determine whether they lend plausible support to Plaintiff's claims.  Accordingly, Defendant's motion is DENIED inasmuch as it is based on the argument that these studies foreclose Plaintiff's claims.[8]

## VI.    PREEMPTION

Defendants next argue that Plaintiffs' claims are expressly and impliedly preempted.  Defendants further contend that (1) "safe harbor provisions" under the UCL preclude Plaintiff's claims; and (2) Plaintiff's claims are barred by the primary jurisdiction doctrine and the abstention doctrine.  The Court addresses these doctrines in turn and concludes that none warrant dismissal of Plaintiff's claims.

### A.    Express Preemption

The Supremacy Clause of the United States Constitution empowers Congress to enact legislation that preempts state law.  U.S. Const. art. VI, cl. 2.; Law v. General Motors Corp., 114 F.3d 908, 909 (9th Cir. 1997) ("The Supremacy Clause empowers Congress to supplant decentralized, state-by-state regulation with uniform national rules").  "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks omitted).  Where, as here, "the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which

---

[8] While it is not necessary to the Court's holding, it notes that even if the two studies cited by Defendants were incorporated by reference, they would not tend to refute Plaintiff's alternative theory of falsity.  Specifically, Plaintiff also alleges that even if the active ingredient in Oscillo were proven to be effective, it is so diluted in Oscillo that it could not possibly deliver any of its claimed benefits.  In other words, consumers would have to consume "an impractical and extremely high quantity of [Oscillo]" to realize its benefits.  See Chavez v. Nestle USA, Inc., 511 Fed. App'x 606, at *1 (9th Cir. 2013).  Such a theory is sufficient to allege with plausibility that members of the public are likely to be deceived by Defendants' labels.  Id. (holding that claims regarding benefits of "Juicy Juice Brain Development" are misleading because the juice contains such trace amounts of the touted ingredient that consumers would have to drink "impractical and extremely high" quantities of juice to realize the promised benefits).

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

necessarily contains the best evidence of Congress' pre-emptive intent." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993). In assessing whether Plaintiff's claims are preempted, the Court is mindful of the presumption against preemption. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) ("In all preemption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'").

Defendants contend that Plaintiff's state law claims impose requirements that are expressly preempted under § 379r of the Food, Drug, and Cosmetic Act ("FDCA"). Section 379r(a) provides that states may not establish "any requirement . . . (1) that relates to the regulation of a [nonprescription drug][9]; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA] . . . ." 21 U.S.C. § 379r(a). "In adding this provision to the FDCA,[10] Congress pre-empted certain state requirements concerning over-the-counter medications and cosmetics, and did so expressly." Delarosa v. Boiron, Inc., 818 F. Supp. 2d 1177, 1184 (C.D. Cal. 2011) (quoting Wyeth v. Levine, 555 U.S. 555, 575 n.8 (2009)).[11]

---

[9] The actual language of § 379r(a)(1) is, "that relates to regulation of a drug that is not subject to the requirements of section 353(b)(1) ... of this title." 21 U.S.C. § 353(b)(1) governs procedures for the distribution of prescription drugs.

[10] This provision was added to the FDCA by the Food and Drug Administration Modernization Act of 1997 ("FDAMA"), which was enacted "to improve the regulation of food, drugs, devices, and biological products." Pub.L. No. 105-115 (Nov. 21, 1997), 111 Stat. 2296.

[11] The definition of a "state requirement" is undisputed. Courts applying section 379r have adopted the same reading of a "state requirement" used in construing the express preemption clause for medical devices found in section 360k(a). See Carter v. Novartis Consumer Health, Inc., 582 F. Supp. 2d 1271, 1280-81 (C.D. Cal. 2008). In construing section 360k(a), the Supreme Court held in Riegel v. Medtronic, 552 U.S. 312, 324 (2008), that "reference to a State's 'requirements' includes its common-law duties." Id. at 324. "[W]hile the common-law remedy is limited to damages, a liability award can be, indeed is designed to be, a potent method of governing conduct and controlling policy." Id. (internal quotation marks omitted).

:

Initials of Preparer                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

Here, the parties do not dispute that Oscillo is a nonprescription drug to which section 379r(a) applies.[12]  Rather, Plaintiff argues that his state law claims are not preempted because they do not impose requirements that are "different from or in addition to" or "otherwise not identical with" federal requirements.  The Court first examines the federal regulations that apply to Oscillo, and then proceeds to evaluate to what extent, if at all, Plaintiff's state law claims would impose non-identical requirements.

Federal law regulates Oscillo in two major respects.  First, the FDCA prohibits the sale of misbranded drugs.  See generally 21 U.S.C. § 331.  A drug is misbranded if the label is false or misleading.  21 U.S.C. § 352(a).  The term "labeling" is defined to include "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."  Id. § 321(m).  Whether labeling or advertising is misleading depends on "not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material."  21 U.S.C. § 321(n).  Second, as with any homeopathic, over-the-counter drug, the FDCA requires the Oscillo label to state the following items: (1) adequate directions for use, 21 C.F.R. § 201.5, (2) a statement of ingredients, id. § 201.10, (3) a statement of identity describing the principal indications for use, id. § 201.61[13], and (4) the net quantity of contents (or dilution), id. § 201.62.

Defendants argue that because federal law requires Oscillo's label to state its intended use, it therefore requires the label to state that the drug is effective for the relief of flu symptoms.  Defendants further argue that Plaintiff seeks to punish Defendants for using this label, and thereby aims to impose requirements different from federal law.  This argument is unpersuasive.  The mere fact that a federal regulation generally requires Defendants to provide an indication of use does not equate to a federal law that mandates, or approves of, the specific indications selected for the Oscillo label — i.e., relief of flu symptoms.  Notably, Defendants concede that Oscillo's label, including the indication of use, was not specifically endorsed by the FDA through any approval process, either through the new drug application

---

[12]  By contrast, in Delarosa, the parties disputed whether the homeopathic drug was excepted from section 379r(a)'s express preemption clause based on the plain text of section 379r(d)(1).  818 F. Supp. 2d at 1184-85.  Because Plaintiff does not make this textual argument, the Court need not address it further.

[13]  The indications for use are also mandated for over-the-counter drugs generally, 21 C.F.R. § 201.66(c)(4), and their absence would render the drug misbranded, 21 U.S.C. § 352(f)(1).

:

Initials of Preparer          PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|

| Title | Leonidas Jovel v. Boiron Inc et al |
|---|---|

process under 21 U.S.C. § 355, or through conformity with a "final monograph."[14]  (Def. Mot. at 21); see also Delarosa, 818 F. Supp. 2d at 1182 ("Unlike non-homeopathic OTC drugs, homeopathic OTC drugs . . . are not evaluated by the FDA at all.").  Therefore, the Court rejects Defendants' argument that they were required under federal law to claim specifically that Oscillo is effective to relieve flu symptoms.

Defendants next suggest that the FDA has indirectly approved Oscillo's label.  They argue that the FDA's Compliance Policy Guide (CPG) § 400.400 states that "appropriate 'uses' for homeopathic drugs are set forth in compilations called *materia medica*."  (Def. Reply at 19).  That is incorrect. Section 400.400 states only that "a guide to the use of homeopathic drugs . . . may be found by referring to the following texts: A Dictionary of Practical Materia Medica by John Henry Clarke, M.D., (3 volumes; Health Science Press) and A Clinical Repertory to the Dictionary of Materia Medica by John Henry Clarke, M.D. (Health Science Press)."  CPG § 400.400.  Nowhere does the FDA express a view as to whether the "uses" advocated in the medical literature are "appropriate."  Although homeopathic drugs "generally must meet the standards for strength, quality, and purity set forth in the Homeopathic Pharmacopeia [of the United States]," the FDA is careful to note that "[a] product's compliance with requirements of the HPUS . . . does not establish that it has been shown by appropriate means to be safe, effective, and not misbranded for its intended use."  CPG § 400.400.  Defendants still cannot identify any strand of federal law that specifically approves or mandates the indications placed on Oscillo's label.

At bottom, federal law requires the Oscillo label to state the chief indications for use in a manner that is not false or misleading.  By comparison, Plaintiff's state law claims mirror this requirement.  If proven, Plaintiff's claims under the UCL and CLRA "would simply require Defendant[s] to truthfully state [Oscillo's] efficacy or not sell its products; such relief would not impose a state requirement that is 'different from or in addition to, or that is otherwise not identical with' that of the FDCA."  Delarosa,

---

[14]  "Under the over-the-counter drug monograph system, the FDA appoints advisory review panels of qualified experts to evaluate the safety and effectiveness of over-the-counter drugs, to review their labeling, and to advise on the promulgation of monographs establishing conditions under which particular categories of over-the-counter drugs can be marketed.  The FDA publishes proposed and tentative final monographs for public review and comment, and eventually promulgates a final monograph in the form of regulations in the Code of Federal Regulations.  Those regulations establish conditions under which a category of over-the-counter drugs is recognized as safe and effective and not misbranded."  Kanter v. Warner-Lambert Co., 122 Cal. Rptr. 2d 72, 77 (Ct. App. 2002); see also Mills v. Warner-Lambert Co., 581 F. Supp. 2d 772, 784 (E.D. Tex. 2008).

:

Initials of Preparer             PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

818 F. Supp. 2d at 1188 (citing 21 U.S.C. § 379r(a)(2)).  Therefore, the Court concludes that Plaintiff's state law claims are not expressly preempted.

The cases cited by Defendant are distinguishable because they involve circumstances where either (1) the state law claims sought to impose clearly non-identical requirements than federal law, e.g., Turek v. General Mills, Inc., 662 F.3d 423, 427 (7th Cir. 2011) (finding preemption where plaintiff sought to add disclaimers to labels of snack bars containing processed dietary fiber, even though federal regulations did not require disclosure of such inferior forms of dietary fiber), or (2) where federal regulations — via pre-market approval and/or monograph —  directed the specific contents of the subject label challenged by the plaintiff, e.g., Carter, 582 F. Supp. 2d at 1275-76 (finding preemption where monograph for subject drug "sets forth the approved indications for use and age-dependent dosage instructions that must be present on the product labeling"); Kanter, 122 Cal. Rptr. 2d at 84-86 (finding preemption where numerous drug labels were either approved through FDA's new drug application process, or were required to make specific statements under the relevant monograph); Mills, 581 F. Supp. 2d at 785-90 (same).

Accordingly, Defendants' motion is DENIED to the extent it is based on the argument that Plaintiff's claims are expressly preempted.[15]

**B.      Implied Preemption**

Implied preemption arises in two circumstances.  First, implied "conflict" preemption exists where there is an 'actual conflict' between state and federal law, Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 884 (2000), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698-99 (1984).  Second, implied "field" preemption may surface where federal law "so thoroughly occup[ies] a legislative field as to make reasonable the inference that Congress left no room for the

---

[15] Defendants also argue that they are insulated from UCL liability under California's "safe harbor doctrine" because the Oscillo label complied with federally-imposed requirements.  Under the safe harbor doctrine, "courts may not use the unfair competition law to condemn actions the Legislature permits."  Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 542 (Cal. 1999). "However, if the Legislature did not consider that activity in those circumstances, the failure to proscribe it in a specific provision does not prevent a judicial determination that it is unfair under the unfair competition law."  Id.  Here, because federal regulations do not specifically condone Defendants' labeling of Oscillo, the Court concludes that Defendants cannot invoke this safe harbor.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

States to supplement it." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (internal quotations omitted).

Defendant appears to argue that Plaintiff's claims are susceptible to implied conflict preemption. The Court disagrees. Given that Plaintiff's state law claims merely seek to impose requirements that are identical to what federal law already requires, to wit, truthful indications of use on Oscillo's label, it is difficult to imagine under these circumstances how the state law conflicts with, or poses an obstacle to, federal law.

Accordingly, Defendants' motion is DENIED to the extent it is based on the argument that Plaintiff's claims are impliedly preempted.

**C.     Primary Jurisdiction**

Citing the primary jurisdiction doctrine, Defendants argue that the Court should abstain from adjudicating this case because doing so would intrude upon the FDA's regulatory authority with respect to over-the-counter homeopathic drugs. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency . . . and is to be used only if a claim involves an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008) (internal quotation marks omitted).

Courts weigh four factors in deciding whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Syntek Semiconductor Co. v. Microchip Tech., Inc., 307 F.3d 775, 781 (9th Cir.2002) (amended).

The primary jurisdiction doctrine is inapplicable here. Defendants assert that "[t]he FDA has regulatory authority over homeopathic drugs, has issued specific regulations regarding homeopathic drug statements on labels, and has the necessary jurisdiction to enforce the veracity of such statements." (Def. Mot. at 24). If such bare-boned facts were enough to invoke the primary jurisdiction doctrine, then courts would never adjudicate claims such as Plaintiff's. See In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig., 590 F. Supp. 2d 1282, 1292 (C.D. Cal. 2008) (refusing to apply primary jurisdiction doctrine because to hold otherwise "would mean that the FDA, not courts, would be

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-10803-SVW-SH | Date | August 16, 2013 |
|---|---|---|---|
| Title | Leonidas Jovel v. Boiron Inc et al | | |

responsible for resolving all questions of whether a statement made in connection with prescription drug advertising was false, misleading, or omitted a material fact").

Further, Defendants cites no facts to suggest that Plaintiff's claims turn on a particularly technical issue within the special expertise of the FDA. Rather, Plaintiff's claims depend upon a determination of whether Defendants' statements regarding Oscillo are likely to deceive a reasonable consumer. "[T]his is not a technical area in which the FDA [has] greater technical expertise than the courts – every day courts decide whether conduct is misleading." Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009). By contrast, the cases cited by Defendant are distinguishable because they *did* involve questions that called for the FDA's unique expertise. E.g., Aaronson v. Vital Pharm., Inc., No. 09-CV-1333, 2010 WL 625337, at *3 (S.D. Cal. Feb. 17, 2010) (issue of whether product was safe was best reserved for FDA); All One God Faith, Inc. v. Hain Celestial Group, Inc., No. 09-3517, 2009 WL 4907433, at *7 (N.D. Cal. Dec. 14, 2009) (issue of whether to enjoin defendants from using the word "organic" until they comply with agency standards was better left to the USDA).

Accordingly, Defendants' motion is DENIED inasmuch as it rests on the primary jurisdiction doctrine.

## VII.   CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. (Dkt. 65). The contingent claims on behalf of the Galluci class are DISMISSED without prejudice. In addition, Plaintiff's claims for injunctive relief on behalf of the non-Galluci class are DISMISSED. Defendants' motion is otherwise DENIED.

The parties are ORDERED to appear for a status conference on Monday, September 9, 2013, at 1:30 p.m., to discuss the future course of litigation in this case, including the propriety of a motion for class certification or motion for summary judgment.

|  |  : |  |
|---|---|---|
| | Initials of Preparer | PMC |