1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER LEWERT                    Case No. CV 11-10803 AB (JPRx)

                     Plaintiff,
12                                         **ORDER DENYING PLAINTIFF'S**
13   v.                                    **MOTION FOR JUDGMENT AS A**
                                           **MATTER OF LAW OR,**
14   BOIRON, INC. and BOIRON, USA,         **ALTERNATIVELY, MOTION FOR A**
     INC.                                  **NEW TRIAL**
15
                     Defendants.
16

17

18        Before the Court is Plaintiff Christopher Lewert's ("Plaintiff") Motion for

19   Judgment as a Matter of Law or, alternatively, Motion for a New Trial ("Motion").  Dkt.

20   No. 485.  Defendants Boiron, Inc. and Boiron, USA, Inc. (collectively, "Defendants")

21   filed an Opposition to the Motion on February 21, 2017.  Dkt. No. 489.  Plaintiff filed a

22   Reply on February 28, 2017.  Dkt. No. 490.  The Court heard oral argument on the

23   Motion on March 20, 2017 and took the matter under submission.  Dkt. No. 495.  For

24   the reasons discussed below, the Court **DENIES** Plaintiff's Motion.

25        **I.     BACKGROUND**

26        Plaintiff, individually and on behalf of a certified class, brought this action against

27   Defendants for violations of the Consumer Legal Remedies Act, California Civil Code

28

                                          1

section 1750, *et seq.* (the "CLRA"), and the Unfair Competition Law, California Business and Professions Code section 17200, *et seq* (the "UCL").  The crux of Plaintiff's case is that Defendants' products Oscillococcinum and Children's Oscillococcinum (collectively, "Oscillo") do not provide relief for flu-like symptoms, as promised on Oscillo's packaging.[1]  Dkt. No. 128, Second Am. Compl. ¶ 2.

Plaintiff's CLRA claim was adjudicated in a seven-day jury trial that began on June 7, 2016.  The jury returned a verdict in favor of Defendants.  On the Special Verdict Form, the jury found that Plaintiff had not proven by a preponderance of the evidence that Defendants' representations that Oscillo relieves flu-like symptoms were false.  Dkt. 447, Special Verdict Form ¶ 2.

Following the trial, the Court ordered the parties to submit briefing on the issue of whether the jury's findings on Plaintiff's CLRA claim were binding on his UCL claim. The Court concluded that Plaintiff's UCL claim was based on the same facts as his CLRA claim and, thus, the Court was bound by the jury's implicit and explicit findings. Dkt. No. 480, Findings of Fact and Conclusions of Law ("UCL Order") 4.  Accordingly, the Court found that Plaintiff failed to prove Defendants' representations were untrue, misleading, or likely to deceive a reasonable customer and entered judgment in favor of Defendants.  UCL Order 4–5.

## II.   DISCUSSION

Plaintiff moves for judgment as a matter of law on the grounds that the jury's verdict on his CLRA claim was plain error.  Mot. 1.  Alternatively, Plaintiff seeks a new trial arguing that the jury's verdict was against the clear weight of evidence, that

---

[1] Oscillo is a homeopathic drug and its label indicates it contains the active ingredient Anas Barbariae Hepatis et Cordis extractum 200ck HPUS ("AB"), which is derived from crushed and incubated duck hearts and livers.  Oscillo also contains two inactive ingredients—sucrose and lactose.  The AB is incorporated into Oscillo by mixing 1 milliliter of a solution with the starting material with 99 milliliters of distilled water and then repeating the dilution process 200 times.  After the 200 dilutions are completed, the final solution is "impregnated" onto sugar granules made from sucrose and lactose.

the Court erroneously admitted anecdotal evidence, and that Defendants' expert witness was permitted to proffer new opinions at trial. Plaintiff also seeks reconsideration of the Court's UCL Order concluding the jury's "no falsity" finding on Plaintiff's CLRA claim is binding on the Court's adjudication of Plaintiff's UCL claim because Plaintiff believes the Court must still determine whether Defendants' representations were misleading or deceptive. Mot. 1. The Court addresses each of these motions in turn.

## A. Motion for Judgment as a Matter of Law

"Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 938–39 (9th Cir. 1999). Plaintiff argues that the jury's verdict is plain error because the evidence presented at trial conclusively established that Oscillo is sugar and sugar cannot effectively relieve flu-like symptoms. Accordingly, Plaintiff implores the Court to overturn the jury's verdict and enter judgment in his favor.

### 1. Legal Standard

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law. Where a party wishes to challenge the sufficiency of evidence supporting a verdict in a civil case, the party must bring two separate motions. *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007). First, the party must move for judgment as matter of law under Rule 50(a) before the case is submitted to the jury. *Id.*; *see also* Fed. R. Civ. P. 50(a)(2). The party must then file a renewed motion for judgment as a matter of law under Rule 50(b) after either the entry of judgment or the jury is discharged. *Nitco Holding*, 491 F.3d at 1089; *see also* Fed. R. Civ. P. 50(b).

Federal Rule of Civil Procedure 50(b) prohibits "a party from moving for judgment as a matter of law after a jury's verdict unless that motion was first presented at the close of evidence." *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997). The Ninth Circuit "strictly adhere[s] to the requirements of Rule 50(b)." *Id.* Thus, where a party fails to bring a motion for judgment as a matter of

law before the case is submitted to the jury, the party "cannot question the sufficiency of the evidence either before the district court . . . or on appeal." *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1459 (9th Cir. 1988) (emphasis omitted), *cert. granted, judgment vacated*, 490 U.S. 1087, 109 S. Ct 2425, 104 L.Ed. 2d 982 (1989) and *opinion reinstated*, 886 F.2d 235 (9th Cir. 1989).

"The single exception to this rule is the plain error doctrine." *Id.* "Only where there is such plain error apparent on the face of the record that failure to review would result in a manifest miscarriage of justice" should such a motion, raised for the first time after judgment, be granted. *Id.* Indeed, for a court to grant a motion for judgment as a matter of law where a party failed to file the motion before the case was submitted to the jury, there must be "an absolute absence of evidence to support the jury's verdict." *Image Technical Servs.*, 125 F.3d at 1212 (citation omitted).

When analyzing a motion for judgment as a matter of law, a court "must view the evidence in the light most favorable to the non-moving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50 (2000)). The court may not "assess the credibility of witnesses . . . ." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003). The court also may not "substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001); *see also Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004) (noting the court's job "is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict.").

### 2. Analysis

Plaintiff concedes he did not move for judgment as a matter of law at the close of evidence at trial. Mot. 1. Thus, the Court may only enter judgment in Plaintiff's favor if "there is plain error apparent on the face of the record that, if not noticed, would result in a manifest miscarriage of justice." *Patel v. Penman*, 103 F.3d 868, 878 (9th Cir. 1996),

4

1    *overruled in part on other grounds as recognized by Nitco Holding*, 941 F.3d at 1086.

2    In determining whether plain error occurred, the Court must perform an "extraordinarily

3    deferential review that is limited to [analyzing] whether there was *any* evidence to

4    support the jury's verdict, irrespective of its sufficiency." *Id.*

5          Plaintiff contends the jury's verdict is plain error because the uncontroverted

6    evidence presented at trial demonstrated that Oscillo is a sugar pill and cannot

7    effectively relieve flu-like symptoms.  For support, Plaintiff points to testimony from

8    witnesses who stated that Defendants "carefully and meticulously" dilute Anas

9    Barbariae Hepatis et Cordis extractum 200ck HPUS ("AB"), the starting material of

10   Oscillo, 200 times "using successive 1:100 dilutions" and perform the dilutions in a

11   "calibrated and validated" manner.  Mot. 3–4.  Plaintiff also cites testimony from his

12   expert witness, Dr. Kurdistani, who stated that if Defendants performed the dilutions in

13   the manner the witnesses described, nothing but water would exist after the 12th or 13th

14   dilution.  Mot. 4.  Dr. Kurdistani also opined that even if Defendants' dilution process

15   was inaccurate and they were off by a factor of 10%, by the 14th dilution nothing but

16   water would remain.  Mot. 4.  According to Plaintiff, this testimony constitutes

17   "overwhelming evidence" that establishes that Oscillo is nothing more than a sugar pill.

18   Mot. 5.

19         Although Defendants' expert witness, Dr. Spingarn, opined that Dr. Kurdistani's

20   conclusions were based on defective science, Plaintiff insists that Dr. Spingarn did not

21   directly counter Dr. Kurdistani's opinions.  Mot. 5.  The Court finds Plaintiff's argument

22   unpersuasive.[2]  The record reflects that Dr. Spingarn testified that Dr. Kurdistani's

23

24   [2] Plaintiff mischaracterizes several portions of Dr. Spingarn's testimony.  For example,
     Plaintiff asserts that Dr. Spingarn testified that he did not know how AB was made or
25   whether AB is completely soluble.  But, the record reflects that Dr. Spingarn testified
     that he had a general understanding of how AB was made at the time he prepared his
26   expert report and that he had gained a more specific understanding of that process by
     the time of trial.  Trial Tr. 1273:23–1275:4, 1276:20–21.  Dr. Spingarn also testified
27   that at the time he wrote his expert report and testified at deposition, he "certainly
28

5

conclusion was wrong because AB is made from "duck meat" and there are scientific reasons—including, among other things, issues with imperfect solubility, materials sticking to containers, and frothing—that AB could remain in the solution after the 200 dilutions occur.  *See* Trial Tr. 1148:24–1150:4, 1156:17–1157:10, 1157:23–1158:6, 1158:19–1159:7, 1167:12–1169:22.  Plaintiff asserts that this testimony was speculative because Dr. Spingarn lacked sufficient knowledge of Defendants' manufacturing process to know whether AB is soluble or whether the dilutions were accurately performed.  But, Dr. Spingarn's testimony regarding the solubility of AB was grounded in his knowledge that AB is derived from duck heart and liver, which, based on his training and experience with solubility of lipids and proteins in meat, he believes are not completely water soluble.  Trial Tr. 1155:17–1156:8, 1270:20–1271:22.  And, his testimony about the possible inaccuracies in the dilution process was based on his professional training and experience with dilutions and his understanding of third-party studies that showed that starting materials may remain even after extreme dilutions because of physical interactions with containers and other issues that may occur during the dilution process.  Thus, the Court concludes that Dr. Spingarn's testimony was not speculative and was properly admitted. *See City of Ponoma v. SQM North America Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (explaining that an expert's testimony is admissible if the knowledge underlying the opinion has "a reliable basis in the knowledge and experience of the relevant discipline" and noting that the test for reliability is "not the correctness of the expert's conclusions but the soundness of his methodology."). Accordingly, the jury was free to assign as much or as little weight to

knew" the material used to make AB was not completely soluble.  Trial Tr. 1275:5–1276:3.  The record also does not support Plaintiff's assertion that Dr. Spingarn conceded that Oscillo is essentially sugar if manufactured as described.  In the testimony Plaintiff cited for this point, Dr. Spingarn was responding to a hypothetical and specifically prefaced his response by noting "[a]s long as I understand that the hypothetical is that these are dilutions that are done differently than Boiron is doing them . . . ." Trial Tr. 1319:2–1320:2.

the testimony as it deemed appropriate.  *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (stating that when an expert's testimony meets the threshold established by Federal Rule of Evidence 702, the expert may testify and the jury decides how much weight to give to the evidence).

Plaintiff also contends that even if Dr. Spingarn's opinions were not purely speculative, Plaintiff effectively eviscerated Dr. Spingarn's testimony during his rebuttal case and, thus, the only reasonable conclusion the jury could have reached was that Oscillo is sugar and Defendants' representations were false.  Mot. 7.  According to Plaintiff, Dr. Kurdistani plainly and clearly explained how and why the "duck meat" used to make Oscillo is completely soluble and pointed out why Dr. Spingarn's theories about frothing and other interactions with containers were inapplicable.  Mot. 7–8.  Dr. Kurdistani's testimony, however, was simply an opinion based on information he reviewed about how Oscillo is made.  Trial Tr. 340:11–20.  Dr. Kurdistani did not perform a chemical analysis of Oscillo's composition or any other testing that irrefutably proved that Oscillo does not contain any AB.  Thus, the jury was not obligated to accept Dr. Kurdistani's opinion.

Indeed, Jury Instruction No. 14 explicitly instructed the jury that it "may have to decide which testimony to believe and which testimony not to believe" and that it could "believe everything a witness [said], part of it, or none of it."  Dkt. 441, Closing Jury Instructions No. 14.  The jury was also instructed that it should judge expert witness testimony like any other testimony and that it could "accept it or reject it" and "give it as much weight as [the jury] thinks it deserves."  Dkt. 441, No. 17.  Accordingly, the jury was free to reject Dr. Kurdistani's testimony regardless of whether Dr. Spingarn's testimony directly contradicted it.  Apparently, the jury was not totally convinced by Dr. Kurdistani's testimony that Oscillo is ineffective in relieving flu-like symptoms.  And, on a Motion for Judgment as a Matter of Law, the Court may not second-guess the jury's credibility determinations or its weighing of the evidence.  *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).

1    Moreover, contrary to Plaintiff's assertion, the question presented to the jury was

2    not whether Oscillo is sugar, but rather whether Defendant's representations that Oscillo

3    relieves flu-like symptoms were false.[3]  Dkt. No. 447, Special Verdict Form.  In addition

4    to Dr. Spingarn's testimony, Defendants presented unrebutted clinical evidence and

5    consumer testimony that Oscillo effectively relieves flu-like symptoms.  Mot. 6–7.  In

6    light of this evidence, alone, the Court cannot conclude there is absolutely no evidence

7    to support the jury's verdict or that there is plain error on the face of the record.  *See*

8    *Image Technical Servs.*, 125 F.3d at 1212.  Indeed, the record reflects that Defendants

9    presented ample evidence suggesting that Oscillo effectively relieves flu-like symptoms.

10   Accordingly, the Court **DENIES** Plaintiff's Motion for Judgment as a Matter of Law.

11   **B. New Trial**

12   Plaintiff alternatively moves for a new trial.  He incorporates his arguments from

13   his Motion for Judgment as a Matter of Law in support of his contention that the jury's

14   verdict is against the clear weight of evidence.  Plaintiff also argues that the

15   Court improperly admitted irrelevant and prejudicial evidence at trial.

16   **1. Legal Standard**

17   Under Rule 59(a) of the Federal Rules of Civil Procedure, a court may grant "a

18   new trial on all or some of the issues and to any party . . .  after a jury trial for any reason

19

20   [3] Although Plaintiff claims that Defendants' counsel's response at a hearing to
21   the Court's question as to whether Oscillo could be any more effective than a placebo
     or sugar pill if it was proven to be sugar is a binding judicial admission, the Court
22   disagrees.  "A judicial admission must be deliberate, clear, and unambiguous."
23   *Grandee Corp. v. Gander Mountain Co.*, 761 F.3d 876, 885, 2014 WL 3765572, at *5
     (8th Cir. Aug. 1, 2014).  Moreover, the Ninth Circuit has noted there is a distinction
24   between statements counsel makes "merely [as] a concession for the sake of
     argument" and those made as a "binding concession" on an issue in a case.  *See U.S.*
25   *v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991).  Counsel's statement was equivocal
26   and presented in response to a question the Court asked for the sake of argument.  *See*
     Dkt. 336, Rep. Tr. Hr'g. 44:18–45:7.  Accordingly, the Court concludes the statement
27   is not a binding judicial admission.

28

1    for which a new trial has [previously] been granted in an action at law in federal court."

2    Fed. R. Civ. P. 59(a)(1)(A).  Although Rule 59(a) "does not specify the grounds for

3    which a new trial may be granted," the Ninth Circuit has recognized that a court may

4    order a new trial where "the verdict is against the weight of the evidence" or "to prevent

5    a miscarriage of justice."  *Molski v. M.J.*, F.3d 724, 729 (9th Cir. 2007) (citation

6    omitted).

7        A trial court "enjoys broad discretion with regard to" a motion for a new trial.

8    *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (citing *Allied Chem.*

9    *Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) ("The authority to grant a new trial . . . is

10   confided almost entirely to the exercise of discretion on the part of the trial court.")).

11   When determining whether to grant a motion for a new trial, a court does not have to

12   consider the evidence from the perspective most favorable to the prevailing party.

13   *Landes Const. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987).  A court

14   may also "weigh the evidence and assess the credibility of witnesses."  *Id.*   If after

15   considering all of the evidence and giving "full respect to the jury's findings," the court

16   is left with the "definite and firm conviction that a mistake has been committed," the

17   court should grant the motion.  *Id.* at 1371–72; see also *Molski*, 481 F.3d at 729 (noting

18   that a district court has a "duty . . .  to weigh the evidence as the court saw it, and to set

19   aside the verdict of the jury, even though supported by substantial evidence, where, in

20   the court's conscientious opinion, the verdict is contrary to the clear weight of

21   evidence." (internal citation, quotations marks, and alterations omitted).

22       **2.  Analysis**

23       Plaintiff urges the Court to order a new trial based on the following reasons:  (1)

24   the jury's verdict was against the clear weight of the evidence; (2) the Court admitted

25   testimony and evidence that confused the jury; and (3) the Court permitted Defendants

26   to proffer new—and previously undisclosed—testimony at trial from Dr. Spingarn,

27   which resulted in prejudice to Plaintiff.

28

### a.  The Weight of Evidence Is in Favor of the Jury's Verdict

Plaintiff first argues the jury's verdict was against the weight of the evidence because he conclusively proved Oscillo is sugar and, thus, cannot be effective.  To support his position, Plaintiff relies on the same arguments advanced in support of his Motion for Judgment as a Matter of Law.  The primary thrust of Plaintiff's argument is that the uncontroverted evidence at trial shows that AB is diluted out of existence.

As discussed above, Dr. Kurdistani's opinions at trial were not irrefutable.  It is undisputed that Dr. Kurdistani did not perform a chemical analysis of Oscillo's composition or any other testing that definitively showed that Oscillo does not contain AB.  Rather, Dr. Kurdistani simply relied on information he gathered about Oscillo's manufacturing process, his professional knowledge, and scientific calculations to conclude that AB is totally water soluble and is completely removed from the solution used to make Oscillo during the dilution process.  Accordingly, Dr. Kurdistani's opinion was subject to rebuttal, which Dr. Spingarn delivered.

The record reflects that Dr. Spingarn's testimony contradicted Dr. Kurdistani's opinion that AB is diluted out of existence, questioned Dr. Kurdistani's methodology, and opined on facts and methods that Dr. Kurdistani did not consider.  This is precisely the type of testimony the Court would expect a rebuttal witness provide.  *See Laflamme v. Safeway, Inc.*, Case No. 3:9-cv-00514, 2010 WL 3522378, at *4 (D. Nev. Sept. 2, 2010).  Indeed, this case presented a quintessential battle of the experts over the issue of Oscillo's efficacy and it was the jury's role to weigh the expert's credibility in light of the conflicting testimony.  Thus, the Court sees no reason to disturb the jury's verdict.  *See  Carrethers v. Bay Area Rapid Transit*, Case No. 9-cv-01101-EMC, 2012 WL 1004847, at *5 (N.D. Cal. March 26, 2012) (noting that "[a] district court's discretion is more limited in cases where, as here, there is conflicting evidence on each side and the case turns on credibility issues.").

Moreover, as previously discussed, Defendants also presented evidence from four clinical studies—including two double-blind, randomized, placebo-controlled clinical

trials—demonstrating Oscillo's efficacy in relieving flu-like symptoms.  Defendants also presented testimony from consumers regarding Oscillo's efficacy.  Considering all of the testimony and evidence presented, the Court cannot conclude that this jury reached a seriously erroneous result, as there was more than sufficient evidence to support a verdict in Defendants' favor.  *See United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1143 (9th Cir. 1999) (stating that a new trial is inappropriate where "[t]he jury award was not outside the range of evidence presented.").

### b.  Consumer and Clinical Evidence Did Not Cause Juror Confusion

Plaintiff next contends that a new trial is appropriate because the Court admitted evidence that caused juror confusion.  According to Plaintiff, the sole issue at trial was whether Oscillo is sugar and the Court should not have allowed in any evidence outside of this narrow issue.  Specifically, Plaintiff contends the Court erred in admitting: (1) anecdotal testimony from doctors who had taken Oscillo and who claimed it worked for them and their patients; and (2) evidence and testimony regarding clinical trials showing that Oscillo is effective.

The Court finds Plaintiff's arguments unpersuasive.  As previously noted, the question presented to the jury was not whether Oscillo is sugar, but rather "whether Defendants' representations that Oscillo relieves flu-like symptoms [were] false."  Dkt. 448.  It is well-settled that the "falsity of advertising claims may be established by testing, scientific literature, or anecdotal evidence."  *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336, 1348 (Cal. 2003); *see also Forcellati v. Hyland's, Inc.*, Case No. 12-1983, 2015 WL 9685557, at *4 (Jan. 12, 2015 C.D. Cal.).  Moreover, Defendants were entitled to use anecdotal and clinical evidence to educate the jury on the principles of homeopathy and homeopathic dilution to show why Plaintiff's evidence regarding the molecular composition of Oscillo is not dispositive of its effectiveness, as the evidence is both relevant and reliable under Federal Rules of Evidence 702 and 403.  Dkt. 386 at 16; *see also Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1072–73 (S.D. Cal. 2015) (permitting expert

testimony regarding general homeopathy theory to support expert's conclusion about effects of specific homeopathic remedy).  Accordingly, the Court finds that this evidence was properly admitted and did not cause any juror confusion.

### c. Plaintiff Did Not Suffer Prejudice from Admission of Spingarn's Testimony

Plaintiff also asserts that a new trial is warranted because the Court improperly permitted Dr. Spingarn to testify about and render new opinions regarding the way Oscillo is made and whether AB is soluble.  Mot. 14.  According to Plaintiff, Dr. Spingarn did not previously opine that AB is meat and may not completely dissolve after 200 1:100 dilutions.  Plaintiff also argues that Dr. Spingarn did not previously disclose that the Chikramane studies could be extrapolated to Oscillo.

Rule 26 of the Federal Rules of Civil Procedure requires an expert witness to disclose, in a written report, "a complete statement of all opinions the witness will express" at trial, and the basis for those opinions.  Fed. R. Civ. P. 26(a)(2)(B)(i).  The purpose of the report is to eliminate unfair surprise to the opposing party.  *See Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995), *cert. denied*, 516 U.S. 822, 116 S. Ct. 84, 133 L. Ed. 2d 42 (1995); *U.S. ex rel. O'Connell v. Chapman University*, 245 F.R.D. 652 (C.D. 2007).  Rule 26 does not, however, limit an expert's testimony to simply reading the report.  *Fahmy v. Jay Z*, Case No. 2:07-cv-05715, 2015 WL 56080299, at *6 (C.D. Cal. Sept. 24, 2015).  Rather, the rule "contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony."  *Id.* (internal citation omitted).

In his expert report, Dr. Spingarn opined that the conclusions Dr. Kurdistani outlined in his expert report were scientifically deficient.  Dkt. No. 485-3, Ex. A, Expert Report of Neil E. Spingarn, Ph.D. ("Spingarn Expert Report") ¶ 8.  Dr. Spingarn was critical of the fact that Dr. Kurdistani assumed "that dilution removes all possible presence of original molecules in the solution" used to make Oscillo because the "assumption is not based on any statistical or scientific analysis of the dilution process."

12

Spingarn Expert Report ¶ 9.  Dr. Spingarn also disagreed with Dr. Kurdistani's conclusion that "for all practical purposes it is impossible to have even a single molecule of [AB] in any dose of Oscillo."  Spingarn Expert Report ¶ 10.  In support of his position, Dr. Spingarn stated that "several studies have shown that materials are detectable in homeopathic products even after extreme dilutions" and then cited to one of the Chikramane studies.  Spingarn Expert Report ¶ 11.  Dr. Spingarn noted that the Chikramane study cited "demonstrates that even after a 200c dilution (the extent used in Oscillo) one can still detect components from the original solution using conventional analytical techniques."  Spingarn Expert Report ¶ 11.  He further noted that another Chikramane study "provided evidence that extreme dilution does not eliminate the presence of analytes from homeopathic medicines."  Spingarn Expert Report ¶ 11.

Based on these statements, the Court concludes there is a sufficient nexus between the opinions expressed in Dr. Spingarn's expert report and his trial testimony.  The information in Dr. Spingarn's report regarding the Chikramane studies signaled his intent to use the information in the studies to support his opinion that Dr. Kurdistani improperly concluded that trace amounts of AB could not be present in Oscillo after extreme dilution.  Similarly, Dr. Spingarn's statement that Dr. Kurdistani incorrectly concluded that AB is completely diluted out of the solution used to make Oscillo broadly encompasses his testimony that the duck meat used to derive AB may not be completely soluble.

Additionally, even if Dr. Spingarn's testimony at trial was beyond the scope of his expert report, the Court finds there was no prejudice to Plaintiff because Plaintiff questioned Dr. Spingarn about these topics at deposition and had an opportunity to cross examine him at trial.  *See generally Medical Instrumentation & Diagnostics Corp. v. Elekta AB*, Case No. 97-cv-2271, 2002 WL 34714563, at *7 (S.D. Cal. Jan. 14, 2002) (finding that exclusion of an expert's testimony was unnecessary even though the expert's report failed to comply with Rule 26(a)(2)(B) because the parties had a practice of taking depositions and the expert provided substantial testimony on the disputed

13

topics at deposition which effectively supplemented the expert report); *O'Connell*, 245
F.R.D. at 656 (ruling that deficiencies in an expert's report could be addressed at the
expert's deposition).  At deposition, Dr. Spingarn specifically broached the topic of
AB's solubility when he stated that he would not assume that all components of AB
dissolve in water because most animals do not dissolve in water.  Dkt. 489-2, Ex. B,
Excerpts from Dep. Test. of Neil Spingarn, ("Spingarn Dep.")  64:22– 65:13.  Plaintiff's
counsel also questioned Dr. Spingarn about the Chikramane studies and asked Dr.
Spingarn how the dissolved metals at issue in the study compare to organic materials
such as AB.  Spingarn Dep. 64:22–65:11.  Dr. Spingarn also discussed at length with
Plaintiff's counsel how the Chikramane studies undermined Dr. Kurdistani's opinion
because the studies explain why a dilution may not work the same in theory as it does in
practice.  Spingarn Dep. 120:1–123:3.

Accordingly, the Court agrees with Defendants' argument that Plaintiff was not
ambushed by Dr. Spingarn's testimony on these topics at trial, as they were
encompassed in the opinions in Dr. Spingarn's expert report and discussed at-length at
deposition.  The record reveals that Plaintiff had adequate notice of Dr. Spingarn's
opinions on these topics and thoroughly addressed the issues through cross-examination
at trial.  Thus, the Court concludes the admission of the testimony did not cause any
prejudice to Plaintiff and, therefore, **DENIES** Plaintiff's Motion for a New Trial.

**C. Motion for Reconsideration**

Plaintiff also asks the Court to reconsider its January 3, 2017 Order finding in
favor of Defendants on Plaintiff's UCL claim.[4]  He argues that reconsideration is
warranted because the Court's conclusion that the jury's explicit and implicit factual

---

[4] Plaintiff does not specifically state in his moving papers whether he moves for
reconsideration under Rule 59 of the Federal Rules of Civil Procedure, Rule 60 of the
Federal Rules of Civil Procedure, or Local Rule 7-18.  Based on Plaintiff's argument
that the Court's ruling was clearly erroneous and manifestly unjust and his reference
to Rule 59 of the Federal Rules of Civil Procedure in his notice of motion, Dkt. No.
485, the Court construes the Motion as being brought pursuant to Federal Rule of
Civil Procedure 59(e).

findings as to his CLRA claim are binding on his UCL claim is the result "clear error" and is "manifestly unjust." Reply 17. The crux of Plaintiff's argument is that the special verdict form did not require the jury to explicitly state why it found that Defendants' representations were not false and the jury did not render any explicit findings as to whether Defendants' statements were misleading or deceptive. Reply 19. According to Plaintiff, he can still prevail on his UCL claim under the fraudulent practices prong because a representation does not have to be false to be misleading or deceptive. Mot. 11.

### 1. Legal Standard

"Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy" that should "be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Indeed, the Ninth Circuit has cautioned that "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, [the court] committed clear error, or . . . there is an intervening change in the controlling law." *Id.* (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Moreover, Rule 59(e) "may not be used" as a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n 5 (2008).

In this district, motions for reconsideration are further governed by Local Rule 7-18, which states that a motion: "may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the existence of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the court before such decision. C.D. Cal. L. R. 7-18.

### 2.  Analysis

All of the arguments Plaintiff advances in his Motion for Reconsideration were previously raised in the post-trial brief he submitted for the Court's consideration in ruling on his UCL claim.  Indeed, the entire portion of Plaintiff's Motion that is devoted to his argument that the Court should reconsider the UCL Order tracks, verbatim, the relevant section of the post-trial brief that Plaintiff filed on this issue.  *Compare* Dkt. No. 485-1 at 9–12 *with* Dkt. No. 453 at 10–13.  As multiple courts have noted, a plaintiff must advance some compelling reason based in new facts, law, or argument, to support his contention that a court's ruling was erroneous: mere disagreement with a court's ruling and disappointment in the outcome of the case are not grounds for reconsideration.  *See e.g., Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988); *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2011) ("[t]o succeed on a [Rule 59(e) motion], a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."), *Kilgore v. Colvin*, Case No. 2:12-cv-1792-CKD, 2013 WL 5425313, at *1 (E.D. Cal. Sept 27, 2013) (internal quotations omitted) ("arguments and evidence that were previously carefully considered by the Court do not provide a basis for amending the judgment.").

Additionally, the Court has considered the arguments raised in Plaintiff's Reply.  Plaintiff contends the Court erroneously concluded that the jury's verdict on his CLRA claim contained an implicit finding that he failed to prove that Oscillo is ineffective in relieving flu-like symptoms and that Oscillo is nothing more than a sugar pill.  Reply 18–19.  According to Plaintiff, the Court could not properly find that the jury's verdict implies it found Oscillo was made of something more than sugar because the jury was presented with evidence at trial—such as clinical trial results and doctor testimonials—that was unrelated to the issue of whether Oscillo is sugar.  Reply 19.  Thus, Plaintiff argues, the jury may have disregarded the sugar issue altogether and simply found for Defendants based on the anecdotal testimony.  Reply 19.  The Court finds Plaintiff's argument unpersuasive because given the overwhelming amount of evidence at trial

16

regarding whether Oscillo contains the active ingredient AB, the Court could not have found Defendants' representations that Oscillo effectively relieves flu-like symptoms were not false without considering whether Oscillo is sugar. *C.f. Los Angeles Police Protective League v. Gates*, 995 2d 1469, 1473–74 (9th Cir. 1993) (explaining that a jury could not have awarded the level of damages it awarded without implicitly finding causation). Accordingly, the Court **DENIES** Plaintiff's Motion for Reconsideration.

### III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Judgment as a Matter of Law, Motion for a New Trial, and Motion for Reconsideration.

**IT IS SO ORDERED.**

Dated:  September 22, 2017     _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE